```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUL 3 0 2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x

ALMARENE JUSINO,

               Plaintiff,

      -against-

NANCY A. BERRYHILL,
*Acting Commissioner of Social Security*,

               Defendant.

---------------------------------------- x

MEMORANDUM DECISION
AND ORDER

17 Civ. 4553 (GBD) (HBP)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Almarene Jusino brings this action under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a determination by the Commissioner of Social Security that she does not qualify for supplemental security income ("SSI") or disability insurance benefits ("DIB"). (*See* Am. Compl., ECF No. 12.) Plaintiff moves this Court for an order remanding this case to the Social Security Administration ("SSA") for further proceedings, while the Commissioner moves, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings. (*See* Pl.'s Mot. to Remand, ECF No. 18; Comm'r's Mot. for J. on the Pleadings, ECF No. 22.)

This matter was referred to Magistrate Judge Henry B. Pitman. (ECF No. 9.) Before this Court is Magistrate Judge Pitman's July 10, 2018 Report and Recommendation ("Report," ECF No. 25), recommending that the Commissioner's motion be denied and that this case be remanded to the SSA for further proceedings.[1] (*Id.* at 76.) In his Report, Magistrate Judge Pitman advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on

---

[1] The relevant procedural and factual background is set forth in detail in the Report and is incorporated by reference herein.

appeal. (*Id.* at 76–77); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). No objections have been filed.

Having reviewed the Report for clear error and finding none, this Court ADOPTS the Report in full and REMANDS this case to the SSA for further proceedings consistent with this Order and the Report.

## I. LEGAL STANDARDS

### A. Report and Recommendations

A court may accept, reject, or modify, in whole or in part, the findings set forth in a report and recommendation. 28 U.S.C. § 636(b)(1)(C). Where no party files objections to a report and recommendation, as here, the court may adopt it if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

### B. The Social Security Act

This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This Court may set aside a decision by the Commissioner only if it is not supported by substantial evidence or if it is based upon legal error. 42 U.S.C. § 405(g); *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence means more than a mere scintilla." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citation and quotation marks omitted). Under the substantial evidence standard, facts found by an

administrative law judge ("ALJ") can be rejected "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted).

Under the Social Security Act, an individual is considered "disabled" for purposes of obtaining benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the individual's "physical or mental impairments [must be] of such severity that [s]he . . . cannot, considering [her] age, education, and work experience, engage in any . . . kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The Commissioner's regulations outline a five-step sequential framework to guide the presiding ALJ in evaluating claims for benefits under the Social Security Act. *See* 20 C.F.R. § 416.920. The Second Circuit has described the first four steps of the analysis as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work.[2]

---

[2] An RFC "is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[]" despite her impairments. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). In determining an individual's RFC, the ALJ is required to "'identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function-by-function basis.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting SSR 96-8p, 1996 WL 374184, at *1).

*Jasinski v. Barnhart*, 341 F.3d 182, 183–84 (2d Cir. 2003) (citation omitted). The claimant bears the burden of proof at each of these steps of the analysis. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999).

Once the claimant has met her burden on each of the first four steps, "the burden shifts to the Commissioner to show there is other gainful work in the national economy which the claimant could perform." *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) (internal quotation marks and citation omitted). Ordinarily, the Commissioner may satisfy her burden at the fifth step by relying solely on the applicable medical-vocational guidelines (the "grids"), 20 C.F.R. pt. 404, subpt. P, app. 2. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). The grids are used to decide whether, given the claimant's age, education, work history, and RFC, she "can engage in any substantial gainful work existing in the national economy." *Rosa*, 168 F.3d at 78 (internal quotation marks and citation omitted).

"Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Id.* For example, where a claimant has nonexertional impairments that "significantly diminish [her] ability to work," the Commissioner "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which the claimant can obtain and perform."[3] *Bapp v. Bowen*, 802 F.2d 601, 603, 605 (2d Cir. 1986); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("If a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert.")

---

[3] Nonexertional limitations "affect only [the claimant's] ability to meet the demands of jobs other than the strength demands," including difficulties (i) functioning because of nervousness, anxiety or depression; (ii) maintaining attention or concentration; (iii) understanding or remembering detailed instructions; (iv) seeing or hearing; (v) tolerating physical features of certain work settings, like dust or fumes; or (vi) performing manipulative or postural functions of some work, such as reaching, handling, stooping, climbing, or crouching. 20 C.F.R. §§ 404.1569a(c)(1), 416.969(a)(c)(1).

4

(internal quotation marks and citations omitted). While the ALJ has discretion to decide whether and to what extent the grids sufficiently account for the claimant's non-exertional impairments such that an expert is not required, he must affirmatively make that determination and clearly explain his reasoning. *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); *Bapp*, 802 F.2d at 606; *Hernandez v. Colvin*, No. 13 Civ. 3035 (RPP), 2014 WL 3883415, at *15 (S.D.N.Y. Aug. 7, 2014) (collecting cases).

The ALJ's failure to consider whether the work the claimant could perform was so significantly diminished by her nonexertional limitations as to necessitate the introduction of vocational testimony, as well as the failure to explain the basis for his decision to rely exclusively on the grids, constitute legal error and are grounds for remand. *See Butts v. Barnhart*, 388 F.3d 377, 384, 387 (2d Cir. 2004); *Bapp*, 802 F.2d at 605–06; *Hernandez*, 2014 WL 3883415, at *15; *Cruz v. Colvin*, No. 12 Civ. 7346 (PAC) (AJP), 2014 WL 774966, at *3 (S.D.N.Y. Feb. 21, 2014).

## II. THE ALJ'S FINDINGS AT THE FIRST FOUR STEPS OF THE SEQUENTIAL ANALYSIS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

The ALJ in this case applied the five-step sequential analysis and relying on Plaintiff's testimony, the testimony of a vocational expert, and various forms of medical evidence, concluded that, between May 23, 2013, and September 1, 2014 (the "Relevant Time Period"), Plaintiff was "not disabled" within the meaning of the Social Security Act. (*See* Report at 40.) In particular, the ALJ found that Plaintiff was not engaged in substantial gainful activity during the Relevant Time Period. (*Id.*) The ALJ further found that Plaintiff suffered from severe impairments, including a thyroid disorder, anemia, fibromyalgia, obesity, and asthma, as well as depressive and anxiety disorders. (*Id.* at 40–41.) However, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the criteria of the listed impairments set forth in the SSA regulations. (*Id.* at 41–44.) The ALJ also concluded that given her age, education, work experience, and RFC, Plaintiff would not be able to

perform her past work as a medical biller or collections clerk. (*Id.* at 44–49.) Notwithstanding, the ALJ determined that based on her age, and the fact that she had at least a high school education and was able to communicate in English, a significant number of jobs existed in the national economy that Plaintiff could perform. (*Id.* at 49.) Accordingly, the ALJ found that Plaintiff was not disabled, and thus not entitled to SSI and DIB benefits, during the Relevant Time Period. (*Id.*)

Plaintiff contends the ALJ committed legal error and that his decision is not supported by substantial evidence for several reasons. (*See* Pl.'s Mem. in Supp. of Mot. to Remand, ECF No. 19.) Among other things, Plaintiff challenges the ALJ's mental RFC assessment, arguing that the ALJ failed to give appropriate weight under the treating source rule to the medical opinions provided by Plaintiff's licensed clinical social worker ("LCSW"). (*Id.* at 19–20.) Plaintiff also asserts that the ALJ's determination that she did not meet or medically equal the criteria specified in Listings 12.04 and 12.06 is not supported by substantial evidence.[4] (*Id.* at 20–22.) In addition, Plaintiff contends the ALJ erred in failing to consult a medical expert in determining whether Plaintiff met or medically equaled the relevant listings. (Pl.'s Reply Mem., ECF No. 24, at 4–6.) Those arguments by Plaintiff lack merit.

The Report correctly found the ALJ did not err in assigning less weight to LCSW Spada's opinions when he assessed Plaintiff's mental RFC. (Report at 63.) As the Report recounts, Plaintiff saw Spada for psychotherapy sessions more than twenty times during the Relevant Time Period. (*Id.* at 12.) Nevertheless, Plaintiff argues, the ALJ gave "little evidentiary weight" to Spada's notes and opinions of Plaintiff's mental health. (*Id.* at 64.) Because SSA regulations do not consider LCSWs "acceptable medical sources," *see* 20 C.F.R. §§ 416.913(a), (d)(1), their opinions are not entitled to

---

[4] Listing 12.04 of the relevant SSA regulations addresses depressive, bipolar, and related disorders, while Listing 12.06 addresses anxiety and obsessive-compulsive disorders. (Report at 54.)

6

controlling weight and the ALJ had "full discretion to determine[,] . . . based on all the evidence before him[,]" the appropriate weight to give Spada's opinions. *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 387 (W.D.N.Y. 2015) (citations omitted).

As the Report correctly found, the ALJ properly considered the relevant factors and all the evidence before him in determining the appropriate weight to give Spada's opinions, and he adequately explained his basis for doing so in his written opinion. (Report at 67–68.) Furthermore, as the Report found, the ALJ's mental RFC assessment of Plaintiff was supported by substantial evidence, including the opinions of Plaintiff's treating psychiatrist and the consultative psychologists who evaluated her. (*See id.* at 68–72.)

The Report also correctly found that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not meet or medically equal the criteria set forth in the 12.04 or 12.06 Listings. (*Id.* at 61.) As the Report notes, Plaintiff's medical record demonstrates that her mental impairments did not result in a marked restriction of her daily activities, or present marked difficulties in social functioning or maintaining concentration, persistence, and pace. (*Id.* at 55–58.) Nor did the administrative record reveal that Plaintiff's impairments caused her any extended period of decompensation. (*Id.* at 58–59.) Accordingly, the ALJ correctly determined that Plaintiff's mental impairments did not meet or medically equal the relevant listings.

In addition, as the Report correctly concluded, the ALJ did not err in failing to consult a medical expert over whether Plaintiff met or medically equaled one of these listings. (*Id.* at 54.) The administrative record here contains a Disability Determination Form completed and signed by a designated psychological consultant. (*See id.* at 52.) Accordingly, the question of medical equivalence was considered and appropriately rejected. *See* SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996) ("The signature of a State agency . . . psychological consultant on an [Disability

7

Determination Form] . . . ensures that consideration by a . . . psychologist[] designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.").

Accordingly, during the first four steps of the sequential analysis, the ALJ did not commit legal error or otherwise make a determination that is not supported by substantial evidence.

### III. THE ALJ ERRED IN RELYING EXCLUSIVELY ON THE GRIDS

Plaintiff challenges the ALJ's conclusion at step five of the analysis that, in light of her impairments, she could perform work existing in significant numbers in the national economy. (Pl.'s Mem. at 22–23.) Specifically, Plaintiff argues that because she adduced evidence that she had significant nonexertional impairments, it was legal error for the ALJ to rely exclusively on the medical-vocational grids. (*Id.*) Here, Plaintiff is correct.

As the Report notes, the ALJ expressly found that Plaintiff suffered from "severe" depressive and anxiety disorders. (*Id.* at 73.) The ALJ also found that these disorders, in combination with her other impairments, significantly limited Plaintiff's ability to perform work activities on a sustained basis. (*Id.* at 73–74.) In light of these findings, the ALJ's exclusive and unexplained reliance on the grids constitutes legal error and warrants remand for further administrative proceedings. *Selian*, 708 F.3d at 421 ("We have explained that the ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert.") (citations omitted). On remand, the ALJ should determine whether Plaintiff's nonexertional limitations have more than a "negligible" impact on Plaintiff's ability to work, and if so, he should consult a vocational expert to determine whether Plaintiff is nonetheless capable of performing work existing in the national economy. *See Zabala*, 595 F.3d at 411.

## IV. CONCLUSION

Magistrate Judge Pitman's Report is ADOPTED. Plaintiff's motion to remand this case to the SSA for further proceedings, (ECF No. 18), is GRANTED. The Commissioner's motion for judgment on the pleadings, (ECF No. 22), is DENIED.

Dated: New York, New York
July 30, 2018

SO ORDERED.

GEORGE B. DANIELS
United States District Judge